IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LANCE YARUS, D.O., | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | No.: 14-cv-01656 |
| | : | |
| WALGREEN CO. and | : | |
| WALGREEN EASTERN CO., INC., | : | |
| Defendants. | : | |

<u>MEMORANDUM</u>

**LYNNE A. SITARSKI**  **DATE: December 8, 2014**
**UNITED STATES MAGISTRATE JUDGE**

Presently before the Court are Plaintiff's Motion to Compel Defendants to Produce Witnesses and Documents for Depositions, for Sanctions, and to Extend the Fact Discovery Deadline (ECF No. 19), and Defendants' opposition thereto (ECF No. 22); Defendants' Motion for Protective Order (ECF No. 21), and Plaintiff's opposition thereto (ECF No. 23); Defendants' Motion to Compel More Specific Discovery Answers and Plaintiff's Deposition (ECF No. 24), and Plaintiff's opposition thereto (ECF No. 28); and several supplemental briefs filed by both parties in support of these interrelated motions (ECF Nos. 25, 26, 29, 30).[1]  For the following reasons, Plaintiff's Motion to Compel will be GRANTED with respect to the request to extend the discovery deadline, DENIED AS MOOT with respect to the request to depose a corporate designee, and DENIED in all other respects; Defendants' Motion for Protective Order will be DENIED AS MOOT; and Defendants' Motion to Compel will be GRANTED in part and DENIED AS MOOT in part.

---

[1] By Order dated October 24, 2014, the Honorable C. Darnell Jones, II referred this motion and all future discovery motions to the undersigned for disposition pursuant to 28 U.S.C. § 636(b)(1)(A).  (ECF No. 20).

**I.     BACKGROUND**

In this diversity case, Lance Yarus, D.O., a physician specializing in pain management, claims that certain Walgreen pharmacists in the Philadelphia area made defamatory comments about him to his patients on five separate occasions. Specifically, Plaintiff claims that, first, on May 1, 2009, a Walgreen pharmacist in Philadelphia told one of Plaintiff's patients that his prescription could not be filled because Plaintiff was "under investigation by the Drug Enforcement Agency (DEA)." (Am. Compl. ¶ 16, ECF No. 10). When Plaintiff contacted the pharmacy about this incident, he was told that Walgreen's "prescriber profile" computer system contained a notation that Plaintiff's prescriptions should not be filled pending a DEA investigation. (Lttr, 5/7/2009, ECF No. 19-2). Plaintiff's attorney then notified Walgreen's legal department that its actions amounted to libel and slander, and asked it to immediately correct its prescriber profile system to reflect Plaintiff's good standing and right to prescribe drugs. (Am. Compl. ¶¶ 17–18, ECF No. 10; Lttr, 5/7/2009, ECF No. 19-2). Michael Freeman, an attorney in Walgreen's legal department, subsequently called Plaintiff's attorney's office to inform Plaintiff that the notation had been removed from his prescriber profile.[2] (Pl.'s Mot. to Compel 4, ECF No. 19).

However, Plaintiff later learned that, on July 23, 2010, another patient was informed by a Walgreen pharmacist that her prescription could not be filled because Plaintiff was under

---

[2] Specifically, Plaintiff contends that Attorney Freeman called Plaintiff's counsel on August 17, 2009, and spoke to a paralegal in the office named Carol Critelli. (Pl.'s Mot. to Compel 4, ECF No. 19). According to Ms. Critelli's phone log, Attorney Freeman stated that he had spoken to the district manager and the remark was removed from the computer system. (*Id.*). He also stated that all staff had been counseled and reprimanded and apologized for what had happened. (*Id.*).

investigation by the DEA.  (Am. Compl. ¶ 19, ECF No. 10).  Plaintiff's attorney again contacted Walgreen's legal department.  (*Id.* at ¶ 20).  On August 13, 2010, Walgreen attorney Brett Stacey wrote to Plaintiff and informed him that "all comments [had] been removed from his prescriber profile."  (*Id.* at ¶ 21–22).

According to Plaintiff, approximately three years later, on June 13, 2013, a Walgreen pharmacist told another patient that she could not fill his prescription because Plaintiff was a "pill pusher banned by the DEA" and on the "DEA red list."  (*Id.* at ¶¶ 23–26).  Similar incidents occurred on December 21, 2013, and March 22, 2014, when two of Plaintiff's patients were told that their prescriptions could not be filled because Plaintiff was "just dispensing narcotics," and was "an irresponsible doctor who just writes scripts and probably does very little treating."  (*Id.* at ¶¶ 30–35, 42).

Based on these allegations, Plaintiff commenced this action alleging defamation and interference with contractual relationships against Walgreen Company and Walgreen Eastern Co., Inc.  Plaintiff claims that Defendants' conduct: exacerbated his multi-vessel coronary artery disease, leading to a minor heart attack and bypass surgery in April 2014; caused severe, permanent and long-term emotional distress; and caused financial damage to his medical practice.  (Am. Compl. ¶¶ 51–53, 68–70, 75–76, ECF No. 10).

Discovery in this matter commenced in or around June 2014.  On August 14, 2014, Plaintiff served Defendants with three notices of deposition, and the following month advised Defendants that he also wished to depose nine more individuals.  (Pl.'s Mot. to Compel 7, ECF No. 19).  After Defendants informed Plaintiff that they would not produce any of these

witnesses, Plaintiff filed in this Court the present Motion to Compel (ECF No. 19),[3] and Defendants filed a Motion for Protective Order (ECF No. 21).

Meanwhile, on September 23, 2014, Defendants served Plaintiff with a Request for Production of Documents. (Mot. to Compel More Specific Discovery Answers, ECF No. 24). Plaintiff provided answers to the Request on October 20, 2014, but did not produce certain requested documents. (*Id.*). As a result, Defendant filed a Motion to Compel seeking more specific answers to their Request. (*Id.*). In that motion, Defendant also asks the Court to resolve two additional discovery disputes. (*Id.* ¶¶ 9–10, ECF No. 24).

## II. DISCUSSION

### A. Legal Standards

"It is well established that the scope and conduct of discovery are within the sound discretion of the trial court." *Marroquin–Manriquez v. I.N.S.*, 699 F.2d 129, 134 (3d Cir. 1983). Pursuant to Federal Rule of Civil Procedure 26(b)(1), a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevant information sought in discovery need not be admissible at trial, as long as it "appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* Relevance is generally "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Funds v. Sanders*, 437 U.S. 340, 351 (1978).

---

[3] Plaintiff also moves the Court to extend the fact discovery deadline and to award him fees and costs incurred in making this motion under Fed. R. Civ. P. 37(a)(5)(A).

While generally liberal, permissible discovery is not without limitations.  "Discovery should not serve as a fishing expedition."  *Upshaw v. Janssen Research & Development, LLC*, No. 11-7574, 2014 WL 1244047, at * 3 (E.D. Pa. Mar. 26, 2014); *see also Claude P. Bamberger Int'l v. Rohm & Haas Co.*, No. 96–1041, 1998 WL 684263, at *5–6 (D.N.J. Mar. 31, 1998) ("While the standard of relevancy is a liberal one, it is not so liberal as to allow a party to roam in shadow zones of relevancy and to explore matter which does not appear germane merely on the theory that it might become so.") (internal quotation marks and citation omitted).

Pursuant to Rule 37, a party who has received evasive or incomplete answers to discovery requests may move for an order compelling discovery.  *See* Fed. R. Civ. P. 37(a)(1), (4).  The moving party bears the initial burden of showing that the requested discovery is relevant. *Morrison v. Phila. Hous. Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001).  The burden then shifts to the party opposing discovery to articulate why discovery should be withheld.  *Id.*  The party resisting production must demonstrate to the court "that the requested documents either do not come within the broad scope of relevance defined pursuant to Fed. R. Civ. P. 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Young v. Lukens Steel Co.*, No. 92-6490, 1994 WL 45156, at *2 (E.D. Pa. Feb. 10, 1994) (quotations and citation omitted).

[I]t is well-established that a party wishing to obtain an order of protection over discovery material must demonstrate that 'good cause' exists for the order of protection.  *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (citing Fed. R. Civ. P. 26(c); *Smith v. Bic Corp.*, 869 F.2d 194, 199 (3d Cir. 1989)).  Good cause is established by a showing that disclosure will work a clearly defined and serious injury to the party seeking disclosure. *Id.*  The

Third Circuit has enunciated a list of non-exhaustive factors that the district court can consider in determining whether "good cause" exists. *See id.* at 787–91; *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995) (citing *Pansy*, 23 F.3d at 787–91). The party seeking a protective order bears the burden of persuasion and "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning do not satisfy the Rule 26(c) test." *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986).

> **B.  Plaintiff's Motion to Compel Depositions and Defendants' Motion for Protective Order**
>
> **1.  Walgreen Employees Involved in Plaintiff's Prescriber Profile**

Plaintiff seeks to depose Robin Wheeler, the individual whom Defendant identified in its self-executing discovery as the person who monitored Plaintiff's prescriber profile in 2009 and 2010, and eight additional Walgreen employees (together, the "Walgreen Employees") who allegedly made entries into Plaintiff's prescriber profile. (Pl.'s Mot. to Compel 4–7, ECF No. 19).

Defendants object to the requested depositions on the ground that, *inter alia*, the information Plaintiff seeks to obtain from the Walgreen Employees is beyond the scope of his claims. Defendants explain that they do not object to the deposition of a Walgreen employee to testify generally about the prescriber profile system, nor do they object to the depositions of the pharmacists alleged to have made defamatory comments to Plaintiff's patients. According to Defendants, however, depositions of the Walgreen Employees who made entries in Plaintiff's profile would not be reasonably calculated to lead to the discovery of admissible evidence, *see* Fed. R. Civ. P. 26(b)(1), because those entries cannot form the basis of a defamation claim;

rather, only communications that are "published" to a third party are actionable.[4]  (Supp. Br. 2–4, ECF No. 26) (citing *Mollick v. Beverly Enterprises – Pennsy., Inc.*, No. 97-1215, 1997 WL 634496, at *3 (E.D. Pa. Sept. 29, 1997) (explaining that, under Pennsylvania law, a defamation claim consists of seven separate elements, one of which is publication by the defendant)).  Therefore, Defendants argue, Plaintiff should not be permitted to conduct time-consuming, expensive discovery about the prescriber profile system.

The Court agrees with Defendants that Plaintiff seeks information from these individuals that is beyond the scope of his defamation claim.[5]  The Court need not resolve the question of whether the notations in the prescriber profile system were "published" within the meaning of governing defamation law at any point prior to their communication to Plaintiff's patients because Plaintiff has confirmed that his cause of action is based upon "the continual re-publication or repetition of information in the prescriber profile system to third parties, *i.e.*, Plaintiff's patients when they go to one of Defendants' pharmacies to have a prescription filled which Plaintiff has written for them."  (Supp. Memo. 3, ECF No. 25).  Because Plaintiff's defamation claim is based on the *pharmacists'* publication of information in Plaintiff's prescriber profile, discovery from these individuals about how and why the allegedly defamatory notations

---

[4] Defendants admit that the prescriber profile system contained a notation that Plaintiff was under investigation by the DEA, and have produced a copy of the prescriber profile containing the notation in question.  (Supp. Br. 2, ECF No 26).

[5] The Court recognizes that Plaintiff's Amended Complaint includes a claim for tortious interference with contract.  However, Plaintiff does not argue in any of his discovery motions or briefs that the discovery he seeks would support that claim.  Therefore, the Court presumes that Plaintiff seeks the discovery on the basis argued: that it is relevant to his defamation claim.

were entered into the profile does not appear to be relevant.[6]

Accordingly, the Court will deny Plaintiff's motion to compel Defendants to produce the Walgreen Employees for deposition. The Court will deny as moot Defendants' protective motion insofar as it pertains to these witnesses.

### 2. In-house Counsel

Plaintiff also asks the Court to compel Defendants to produce for deposition Michael Freeman, the in-house attorney who informed Plaintiff's counsel in August 2009 that the defamatory remarks had been removed from Plaintiff's prescriber profile, and Brett Stacey, the in-house attorney who communicated the same to Plaintiff in August 2010. Plaintiff argues that he is entitled to depose these Walgreen attorneys in order to determine "what they relied on" in representing to Plaintiff that the notations had been removed. (Pl's Supp. Memo. of Law 14, ECF No. 25). As previously noted, Plaintiff's attorney wrote to Walgreen's Legal Department first in May 2009, and again in July 2010, to advise them that she "represent[s Plaintiff] regarding his claims for injuries stemming from Walgreen's actions which constitute libel and slander," and to demand that the defamatory notations be removed from Plaintiff's prescriber profile. (Lttrs 5/7/2009 and 7/26/2010, ECF No. 19-2). In response to the first letter, Attorney Freeman told Plaintiff's attorney's paralegal that he had spoken with the district manager and the

---

[6] In order to prevail in a defamation action under Pennsylvania law, the plaintiff has the burden of proving: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) an understanding by the reader or listener of its defamatory meaning; and (5) an understanding by the reader or listener of an intent by the defendant that the statement refer to the plaintiff. 42 Pa. Cons. Stat. Ann. § 8343(a) (1998); *Tucker v. Fischbein*, 237 F.3d 275, 281 (3d Cir. 2001). In addition, additional minimum constitutional standards of fault may apply depending on the public or private status of the plaintiff and whether the speech pertains to matters of public concern. *See* Rodney A. Smolla, Law of Defamation §§ 3:7, 3:18, 3:23 (1994).

remark had been removed from the computer system. (Pl's Mot. to Compel 4, ECF No. 19). He also stated that all staff had been counseled and reprimanded, and apologized for what had happened. (*Id.*). In response to the second letter, Attorney Stacey wrote a letter to Plaintiff advising him that two District Pharmacy Supervisors were investigating the incident, and that all comments had been removed from his profile. (Lttr 8/13/2010, ECF No. 10-1).

Defendants oppose Plaintiff's Motion to Compel and seek a protective order precluding these depositions on the ground that Attorneys Freeman and Stacey do not have any relevant information because they have no personal knowledge of any of the alleged defamatory comments. Defendants further argue that any relevant information they might have is protected by the work-product doctrine because it was obtained in anticipation of litigation threatened by Plaintiff's counsel in 2009 and 2010. Lastly, Defendants claim that, in any event, these attorneys were involved in this matter only in 2009 and 2010, outside the applicable statute of limitations.

The Court agrees with Defendants that what the attorneys "relied on" does not appear to be relevant to Plaintiff's defamation claim. As discussed above, Plaintiff's cause of action concerns only the pharmacists' allegedly defamatory statements to Plaintiff's patients.[7] The reasons why Attorneys Freeman and Stacey told Plaintiff that the notations had been removed have no evident bearing on the pharmacists' actions — and, even assuming they do, Plaintiff can learn this information by deposing the pharmacists themselves. Furthermore, to the extent that

---

[7] Plaintiff argues in his discovery motions that the attorneys' representations to him in 2009 and 2010 that the notations had been removed from his profile constitute "fraudulent concealment" so as to toll the running of the applicable statute of limitations. *See Mast v. Cabot Corp.*, 449 F.3d 502, 516 (explaining that Pennsylvania's fraudulent concealment doctrine tolls the statute of limitations where "through fraud or concealment the defendant causes the plaintiff to relax vigilance or deviate from the right of inquiry"). Plaintiff does not argue that he seeks to depose Attorneys Freeman and Stacey in order to further develop this theory.

Plaintiff seeks to learn more about the communications Attorneys Freeman and Stacey had with Walgreen employees in response to the 2009 and 2010 letters from Plaintiff's attorney, such communications are likely protected by the attorney-client privilege. *See* 42 Pa. Cons. Stat. Ann. § 5928; *see also Teleglobe Commc'ns Corp. v. BCE Inc.*, 493 F.3d 345, 359 (3d Cir. 2007) (explaining that the attorney-client privilege protects disclosure of communications between a client and its attorney related to securing legal advice). Similarly, documents that Attorneys Freeman and Stacey prepared in response to Plaintiff's threatened lawsuit were prepared in anticipation of litigation and not discoverable absent further showing of substantial need by Plaintiff. *See* Fed. R. Civ. P. 26(b)(3) (preventing an adverse litigant from examining "documents and tangible things that are prepared in anticipation of litigation"); *Hickman v. Taylor*, 329 U.S. 495, 511 (1947) (precluding discovery of "interviews, statements, memoranda, correspondence, briefs, mental impressions, [and] personal beliefs"). Furthermore, although Plaintiff argues that the attorneys waived these privileges when they informed him that Walgreen employees had advised them that the defamatory statements had been removed from his prescriber profile, the attorneys' statements simply do not amount to waivers; rather, a waiver can be found only where a client has made the decision and taken an affirmative step in the litigation to place counsel's advice at issue, *see Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994), or where a client voluntarily discloses the protected documents to one's adversaries, *see Montgomery Cty. v. Microcode Corp.*, 175 F.3d 296, 304 (3d Cir. 1999).

     Accordingly, the Court will deny Plaintiff's motion to compel Defendants to produce Attorneys Freeman and Stacey for deposition. The Court will deny as moot Defendants' motion

for protective order insofar as it pertains to these witnesses.

### 3. Corporate Designee

Plaintiff also seeks to depose a corporate designee pursuant to Fed. R. Civ. P. 12(b)(6). Because Defendants state that they are willing to produce a corporate designee, the Court will deny as moot Plaintiff's Motion to Compel with the understanding that Defendants will promptly produce a witness for deposition, without the need for further Court intervention.

### 4. Extension of Fact Discovery Deadline

In his Motion to Compel, Plaintiff asks the Court to extend the December 31, 2014 deadline for completion of fact discovery an additional fourteen days, without disrupting any additional deadlines. (Mot. 14, ECF No. 19). For their part, Defendant asks for a one-month extension of the discovery deadline to depose Plaintiff and approximately six witnesses he has identified, and to schedule examinations with the proper medical experts. (Resp. in Opp. to Motion to Compel 7, ECF No. 22).

The Court will grant Plaintiff's motion in this respect and extend the fact discovery deadline an additional thirty days. The other deadlines shall not be affected by this extension.

### 5. Request for Sanctions

Plaintiff moves the Court to issue an order pursuant to Fed. R. Civ. P. 37(a)(5)(A) requiring Defendants to pay the counsel fees that Plaintiff incurred in preparing and filing this motion. *See* Fed. R. Civ. P. 37(a)(5)(A) (providing that, if the Court grants a party's motion to compel, it "must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees"). Given that, for

the reasons discussed above, Plaintiff's Motion to Compel will be in large part denied, he is not entitled to an award of expenses under Rule 37.  Accordingly, the Court will deny Plaintiff's motion in this respect.

    **C.**  **Defendants' Motion to Compel More Specific Discovery Answers and Plaintiff's Deposition**

    **1.**  **Motion to Compel More Specific Discovery Answers**

Defendants contend that Plaintiff's responses to several written discovery requests are insufficient, and asks the Court to compel Plaintiff to provide more specific answers.

First, in Request No. 9, Defendants sought copies of Plaintiff's patient appointment books from 2009 to the present day.  Defendants do not object to appropriate redactions to preserve privacy.  (Mot. 2, ECF No. 24).  Defendant claims that the appointment book constitutes evidence of the state of Plaintiff's practice before and after the alleged defamatory comments, which is relevant to his claim that Defendants damaged his practice.  (*Id.*).  Plaintiff now claims that he cannot disclose his appointment log without violating his patients' privacy.  (Resp. 4, ECF No. 28). According to Plaintiff, Defendants' suggestion that he make redactions to the log is "meaningless" because he would have to redact every line of every page.  (*Id.*).  The Court finds that, contrary to Plaintiff's contention, production of the appointment logs with redactions would not be meaningless; to the contrary, the logs show the fact and nature of each appointment.  Furthermore, although Plaintiff states that there are a number of other ways to assess the state of his practice before and after the incidents at issue, he does not identify those "other ways."  (Resp. 4–5, ECF No. 28).  Therefore, the Court will grant Defendants' motion to compel with respect to the patient logs, subject to redaction of patient names, to protect patients' privacy.  In Request No. 17, Defendant sought copies of all written discovery produced in

the case of *Lance Yarus, D.O. v. James Tinnyo, Esq., and the Law Firm of Thomas, Thomas & Hafer,* (Ct. Com. Pl. No. 130902964), pending in the Philadelphia Court of Common Pleas. Defendants state that Plaintiff has produced deposition transcripts from that case, but has refused to produce his interrogatory answers and all documents produced. (Mot. 2, ECF No. 24). Defendants claim that these documents are relevant to Plaintiff's damages in the present case because "he makes the same claims against the defendants in both cases." (*Id.*). In response, Plaintiff claims that he has complied with this request, and, to the extent he has not, attaches to his Response copies of the interrogatories and his responses to Mr. Tinnyo's RFP. (Resp. 5–6, ECF No. 28). Because it appears to the Court that these documents satisfy Defendants' request, the Court will deny as moot Defendant's motion with respect to RFP No. 17.

In Requests 19 through 21, Defendants sought copies of all personal income and business tax returns from 2007 to 2013. Defendants state that Plaintiff produced certain personal income tax returns, but failed to provide his 2009 1040 form. (Mot. 2, ECF No. 24). Defendants further state that although Plaintiff's counsel informed Defendants that Plaintiff did not file tax returns on behalf of his medical practice (Regional Orthopedic Associated, P.C.), he subsequently produced such returns — but only for 2007, 2009, and 2013, and has refused to produce the rest. (Mot. 2–3, ECF No. 24). Lastly, Defendants contend that they believe that Plaintiff owns at least one other company, and that he should be required to identify and produce the tax returns for that company as well. (Mot. 3, ECF No. 24). In response, Plaintiff contends that, contrary to Defendants' contention, he has produced these documents. With respect to his 2009 1040, Plaintiff states that it was produced in his October 20, 2014 production and can be found at Bates stamped page 1586. (Resp. 6, ECF No. 28). In their Reply, Defendants insist that he has not

produced that document, nor any returns for "LS&M, LLC." (Lttr 11/14/14, ECF No. 30). Because the Court does not have any additional information from the parties to determine which party is correct on these matters, it will deny as moot Defendants' motion to compel production of the requested materials. Given that Plaintiff has not asserted any objections to producing the requested materials, the Court is confident that the parties can act in a professional manner and resolve their disagreement as to which documents have or have not already been produced.

### 2.  HIPAA Release Form

Next, Defendants contend that, on October 24, 2014, they faxed a letter to Plaintiff's counsel with a HIPAA release for Paul Dikun, Ph. D., and asked that Plaintiff sign and return the form. (Mot. 3, ECF No. 24). Defendants explain that Plaintiff has indicated that he was treated by Dr. Dikun in July 2014 as a result of the defamatory statements at issue in this case. (*Id*.). Defendants claim that Plaintiff has failed to return the HIPAA form. (*Id.*). In response, Plaintiff contends that Defendants received the relevant records from Dr. Dikun with the records that were subpoenaed by counsel for Thomas, Thomas & Hafer in the Court of Common Pleas suit. (Resp. 6, ECF No. 28). Because Defendants do not counter Plaintiff's representation in their Reply, and because the Court has not been given any reason to doubt Plaintiff's representation that Defendants have received the relevant materials, it will deny as moot Defendants' motion to compel production of the HIPAA Release Form.

### 3.  Plaintiff's Deposition

Lastly, Defendants claim that although defense counsel has attempted several times to schedule a date to depose Plaintiff, Plaintiff's counsel "refuses to agree to a deposition date." (Mot. 3, ECF No. 24). According to Plaintiff's counsel, however, he has made Plaintiff

reasonably available for deposition.  (Resp. 7, ECF No. 28).  Yet, in their Reply, Defendants state that Plaintiff's counsel has not accurately represented their discussions attempting to establish a deposition date, and argues that, "[i]n light of the pattern of resistence as outlined in the motion, the issue of plaintiff's deposition is not yet moot."  (Lttr 11/14/14. ECF No. 30).  The Court is confident that two experienced attorneys such as Mr. Sanzo and Mr. Innelli can agree on a deposition date without this Court's intervention.  Therefore, it will deny as moot Defendants' Motion to Compel in this regard.

### III.   CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Compel Defendants to Produce Witnesses and Documents for Depositions, for Sanctions, and to Extend the Fact Discovery Deadline (ECF No. 19) will be GRANTED with respect to the request to extend the discovery deadline, DENIED AS MOOT with respect to the request to depose a corporate designee, and DENIED in all other respects; Defendants' Motion for Protective Order (ECF No. 21) will be DENIED AS MOOT; and Defendants' Motion to Compel More Specific Discovery Answers and Plaintiff's Deposition (ECF No. 24), will be GRANTED in part and DENIED AS MOOT in part.

An appropriate order follows.

BY THE COURT:

/s/ Lynne A. Sitarski

LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE