IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LANCE YARUS, D.O., | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 14-1656 |
| | : | |
| WALGREEN COMPANY et al., | : | |
| Defendant. | : | |

**Jones, II    J.**                                                                                      **March 4, 2015**

### MEMORANDUM

**I.    Background**

   **a.  Underlying Case**

Lance Yarus, D.O. ("Plaintiff"), a physician specializing in pain management, alleges three causes of action against Walgreen Company and Walgreen Eastern Co., Inc. ("Defendants"). First, Plaintiff alleges that Walgreen pharmacists in the Philadelphia area made defamatory comments about him to his patients on five separate occasions, across a period of roughly five years, in reliance on false information on Defendants' prescriber profile system. (Dkt No. 10, Pl. Amended Compl. [hereinafter AC] ¶¶ 16, 19, 23-26, 30-35, 40-42, 43-56.) Second, Plaintiff alleges that in-house counsel for Defendants affirmatively misrepresented to Plaintiff that the false information had been removed from the computer system, even though the information had not been removed. (AC ¶¶ 17-18, 20-22, 57-71.) Thus, Plaintiff argues, the statute of limitations was tolled by the affirmative misrepresentation by Defendants. Third, Plaintiff alleges that these defamatory incidents interfered with his present contractual relationships.

   **b.  Plaintiff's Motion to Compel, Defendants' Response**

On October 23, 2014, Plaintiff filed a Motion to Compel the depositions of (1) Robin Wheeler and other Walgreen employees who controlled the content on Defendants' prescriber profile for Plaintiff, (2) Brett Stacey and Michael Freeman, Defendants' former in-house attorneys, and (3) Defendants' corporate designee. (Dkt Nos. 19-20, Pl. Mot. to Compel Discovery [hereinafter Pl. Mot.].)

1

On October 28, 2014, Defendants responded. (Dkt No. 22, Def. Resp. to Pl. Mot. to Compel [hereinafter Defs. Resp. to Pl. Mot.].) Defendants specifically objected to asking these witnesses any questions about their alleged entries on Plaintiff's prescriber profile. Defendants contended that such evidence would not be admissible because these entries could not form the basis of a defamation claim.

### c. Defendants' Motion for Protective Order, Plaintiff's Response

On October 28, 2014, Defendants moved for a protective order to prevent discovery into (1) any allegedly defamatory comments published prior to November 26, 2012; (2) Walgreen's prescriber profile system; (3) deposition of a corporate designee; (4) depositions of former in-house counsel; and (5) depositions of Robin Wheeler and other Walgreen employees. (Dkt No. 21, Defs. Mot. for Protective Order [hereinafter Defs. Mot.] at 2.)

On October 29, 2014, Plaintiff responded. (Dkt No. 23, Pl. Resp. to Defs. Mot.) Plaintiff countered that (1) the statute of limitations was tolled by Defendants' affirmative misrepresentations; (2) discovery about the prescriber profile system was relevant to the defamation claim; (3) notice for deposition of a corporate designee was proper under Rule 30(b); (4) there was no attorney work privilege because witnesses already waived the privilege; and (5) the testimony of Robin Wheeler and other employees with access to the prescriber profile was relevant to the defamation claim.

### d. Magistrate Judge's Order

On December 8, 2014, the Honorable Lynne A. Sitarski, United States Magistrate Judge, ordered that Plaintiff's Motion to Compel Discovery was denied, in relevant part to this appeal, and that Plaintiff's Motion to depose a corporate designee was denied as moot. (Dkt No. 36-37, Sitarski, J., Memorandum and Order [hereinafter MJ Memo and MJ Order, respectfully].)

### e. Present Appeal

Plaintiff alleges that Judge Sitarski's Order and Memorandum converted a discovery dispute into a dispositive Motion to Dismiss ruling. (Dkt No. 40, Plaintiff's Appeal [hereinafter Pl. App.] at 2.) Plaintiff urges the Court to employ a *de novo* review standard and to vacate and reverse the Magistrate Court's Order denying Plaintiff's Motion to Compel the deposition testimony of (1) Walgreen employees involved in the prescriber profile; (2) Walgreen's in-house counsel; and (3) Walgreen corporate designee.

## II.     Standard of Review

A District Court may reverse a Magistrate Judge's order for a non-dispositive matter under 28 U.S.C. § 636(b)(1)(A), only if it is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(b). A ruling is clearly erroneous if the reviewing court has "the definite and firm conviction that a mistake has been committed." *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 92 (3d Cir. 1992). "Clear error thus requires something more than simple disagreement." *F.T.C. v. NHS Systems*, Inc., 2011 WL 5979573, at *3 (E.D. Pa. 2011). Under the clearly erroneous standard, the District Court shall not reverse the Magistrate Judge's determination even where the Court might have decided the matter differently. *Cardona v. Gen. Motors. Corp.*, 942 F.Supp. 968, 971 (D.N.J. 1996).

It is undisputed that the proper standard of review for standard discovery orders is the "clearly erroneous or contrary to law" standard. *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 92 (3d Cir. 1992) (citing 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. Rule 72(a)); *see also Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1113 (3d Cir.1986); *John F. Harkins Co. v. Waldinger Corp.*, 796 F.2d 657, 662 (3d Cir. 1986). A discovery order is "not dispositive of a claim or defense of a party" as contemplated by Fed. R. Civ. P. 72(a); *In re Gabapentin Patent Litig.*, 312 F. Supp. 2d 653, 662 (D.N.J. 2004).

However, the Court will review a Magistrate Court's legal conclusions under de novo review. *Stepney v. Gilliard*, 2006 WL 2226334, at *2 (D.N.J. 2006). Moreover, when a Magistrate Judge rules on a dispositive issue, the Court will review such decision *de novo*. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).

The question for the Court is whether any of the Magistrate Court's putative discovery rulings actually amounted to a granting of a dispositive motion, e.g., a Motion to Dismiss, as to any of Plaintiff's claims.

### i.  Denial of Motion to Compel deposition of Walgreen employees involved in the prescriber profile system

The first holding by the Magistrate Court at issue is the denial of Plaintiff's Motion to Compel Defendants to produce Walgreen employees involved in the prescriber profile system for deposition. In the Court's memorandum, the Magistrate Court explained:

> The Court agrees with Defendants that Plaintiff seeks information from these individuals that is beyond the scope of his defamation claim. The Court need not resolve the question

3

> of whether the notations in the prescriber profile system were "published" within the meaning of governing defamation law at any point prior to their communication to Plaintiff's patients because Plaintiff has confirmed that his cause of action is based upon "the continual republication or repetition of information in the prescriber profile system to third parties, i.e., Plaintiff's patients when they go to one of Defendants' pharmacies to have a prescription filled which Plaintiff has written for them." Because Plaintiff's defamation claim is based on the pharmacists' publication of information in Plaintiff's prescriber profile, discovery from these individuals about how and why the allegedly defamatory notations were entered into the profile does not appear to be relevant. (MJ Memo at 7-8) (internal citations omitted)).

The Court's statement that Plaintiff "has confirmed that his cause of action is based upon 'the continual republication or repetition of information in the prescriber profile system to third parties,'" is a reference to Plaintiff's Supplemental Memorandum of Law in Support of his Motion to Compel and in Opposition to Defendants' Motion for Protective Order. (Dkt No. 25, Pl. Supp. Mem. [hereinafter Pl. Supp.].) Plaintiff's statement was made in reference to Defendants' argument that the language on the prescriber profile system could not itself constitute defamation because it has never been published to a third party. (Pl. Supp. at 2.) Plaintiff countered that assertion by arguing that the information on the prescriber profile could be defamation because that information was continually republished or repeated to third parties by the pharmacists restating the prescriber profile language to the patients. (Pl. Supp. at 3.)

The Magistrate Court, however, took Plaintiff's statement in his Supplemental Memorandum as an admission by Plaintiff that Plaintiff was only pursuing a claim of defamation based on the actual statements made by the pharmacists independent of their reliance on the prescriber profile, rather than a cause of action that the statements on the prescriber profile system were themselves defamatory because they were repeated by the pharmacists to third parties.

This Court reads Plaintiff's statement to instead assert a theory of liability based on the defamatory nature of the prescriber profile comments themselves. Such a reading is consistent with the plain reading of Plaintiff's Amended Complaint. In his Amended Complaint, Plaintiff alleges that Walgreen pharmacists told his patients that (1) Plaintiff was under investigation by the DEA; (2) that Plaintiff was on "the DEA red list" and is a "pill pusher banned from the DEA;" (3) that Plaintiff was just "dispensing narcotics and no Walgreens, CVS, or probably Rite-Aid would fill [Plaintiff's] prescriptions;" (4) that Plaintiff's patient should "consider

4

getting another physician because [Plaintiff] is under investigation by the DEA." (AC ¶ 44.) Plaintiff further alleges that:

> 45. [Defendant Walgreen] published, communicated, and transmitted false and defamatory information through its Intercom Plus computer system to the Walgreen pharmacies…for the specific purpose of having that information relied upon by those pharmacies and pharmacists, who then repeated to plaintiff's patients and others the false and defamatory information. (AC ¶ 45.)
>
> \*\*\*
>
> 50. Each of these defamatory statements was made by the Walgreen pharmacists acting within the course and scope of their employment for defendant Eastern and acting on the basis of instructions or information given to them by defendant Walgreen Company and contained in its provider profile.
>
> \*\*\*
>
> 54. The Walgreen pharmacists, in making the defamatory statements in question, were acting within the actual or apparent scope of their authority for defendant Eastern, and relying on the false and defamatory information created and communicated to them on defendant Walgreen Company's Intercom Plus database.
>
> 55. It is averred that there has been a pattern and continuing course of conduct by defendant Walgreen Company in making and communicating to Walgreen pharmacists the false and defamatory statements about plaintiff from May 2009 down until the present time through its Intercom Plus database. (AC ¶ 44, 50, 54-55.)

From a plain, straightforward reading of this claim, it is apparent to the Court that Plaintiff alleges two theories of liability: (1) Walgreen pharmacists, in their authority as Walgreen employees, published defamatory statements to Plaintiff's patients (third parties) by telling these patients the various allegedly false statements; (2) Walgreen's Intercom Plus computer system contained defamatory statements on Plaintiff's prescriber profile that were published to Plaintiff's patients (third parties) upon the repetition of these statements by the pharmacists to these patients. Between the first and second theories, the focus shifts from the intent or knowledge of the pharmacists to the intent or knowledge of the persons who imputed the language onto the prescriber profile system. Under the second theory, because the allegedly defamatory statement remains the statement from the prescriber profile, the intent, knowledge,

and context of the persons entering the information onto the prescriber profile become relevant to the defamation claim.[1]

Thus, the question for the Court is whether the Magistrate Court effectively dismissed Plaintiff's second theory of liability. Plaintiff argues that the Magistrate Court found that the information in Defendants' prescriber profile concerning Plaintiff could not form the basis of a defamation claim because it was not "published." (Pl. App. ¶ 38.) Plaintiff argues:

> "[The] Order overlooks or misapprehends both the specific language in plaintiff's Amended Complaint and the settled law of defamation with respect to republication and repetition of defamatory statements. [The] Order eliminates plaintiff's right to develop its defamation claim against defendants based upon its liability for repetition by its pharmacists to plaintiff's patients of the defamatory information in its prescriber profile." (Pl. App. ¶¶ 39-40.)

The Court notes that the Magistrate Court explicitly did not rule whether the information on the prescriber profile was published. (MJ Memo at 7.) However, the Court does find that the Magistrate Court's reasoning in the Order did assume that Plaintiff was not pursuing a theory of liability based on the repetition of the prescriber profile's language. By asserting that Plaintiff did not have a theory of liability under which he can argue that the language on the prescriber profiles itself was defamatory, the Magistrate Court effectively dismissed the portions of Plaintiff's Amended Complaint that alleged such a theory of liability. The Court must review this Order *de novo*. Such analysis occurs below.

---

[1] The Court asserts no opinion as the merits of Plaintiff's second theory of liability. However, the Court confirms that such a theory is theoretically actionable. "The publication of a libel or slander is a legal cause of any special harm resulting from its repetition by a third person if, but only if…the repetition was reasonably to be expected. Restatement (Second) of Torts § 576. The content of a privileged communication (e.g., a confidential company internal website) may still be defamatory if repetition of the content "is the natural and probable result" of the privileged communication. *Agriss v. Roadway Exp., Inc.*, 334 Pa.Super. 295 (citing *Tumbarella v. Kroger Co.*, 85 Mich.App. 482 (1978)). In this case, Plaintiff has pled that it was reasonable and probable that Defendants' employees (Walgreen pharmacists) would repeat to third parties (Plaintiff's patients) the content of the prescriber profile system, and that such repetition did in fact occur.

The Court notes that Defendants argue that *Tumbarella* and *Agriss* do not apply to the facts of this case because in those cases, the original language was repeated/republished verbatim, whereas, in this case, the repetition was not alleged to be verbatim. (Def. Resp. to Pl. App. ¶¶ 38-49.) The Court finds it inappropriate to debate the merits of Plaintiff's pled theory of liability in an order on a discovery motion. This is not a motion to dismiss. Thus, the Court will not endeavor to answer whether or not Plaintiff has sufficiently pled facts that align with the prevailing standards set forth in *Tumbarella* and *Agriss*.

### ii. Denial of Motion to Compel depositions of in-house counsel

The Magistrate Court denied Plaintiff's Motion to Compel depositions of in-house counsel on four grounds: (1) that testimony was irrelevant to Plaintiff's defamation claim; (2) that Plaintiff did not seek to depose the two Defendants about his fraudulent concealment theory; (3) the communications sought were protected by attorney work privilege; and (4) there was no waiver of the attorney work privilege. (MJ Memo at 9-10.)  Plaintiff argues that this reasoning effectively eliminates his ability to pursue punitive damages or his theory of the tolling of the statute of limitations.

The Court finds that the Magistrate Court's main theory for denial – that Plaintiff was not arguing that the prescriber profile language was defamatory because of *its* repetition to third parties – is inapposite of the Amended Complaint. Also, as to the Magistrate Court's second stated reason, in his appeal, Plaintiff counters that he does want to depose in-house counsel so as to develop evidence on the theory of fraudulent concealment which allegedly tolled the statute of limitations. (Pl. App. ¶¶ 76-78.) However, the Magistrate Court provides two additional, independent reasons to deny the Motion: the attorney work product doctrine provides a privilege regarding this information and the lack of a waiver of such privilege further protects the information.

Considered all together, the Court finds that the Magistrate Court did effectively dismiss Plaintiff's arguments for punitive damages and Plaintiff's Count II. This holding will be reviewed *de novo*.

### iii. Denial as Moot of the Motion to Compel the deposition of a corporate designee

Plaintiff moved for a corporate designee to testify about the Defendants' prescriber profile. The Magistrate Court denied this as moot because Defendants stated that they were willing to produce a corporate designee. (MJ Order at 11.) Plaintiff argues that the record shows that Defendants actually refused to produce a corporate designee. Defendants stated in their reply that "Walgreen has no objection to producing a corporate designee in response to a notice listing appropriate topics," but that information about the "prescriber profile system…is irrelevant and beyond the scope of Plaintiff's defamation claim." (Dkt No. 44, Defs. Resp. to Pl. App. [hereinafter Defs. Resp. to App.] ¶ 22.)

7

This ruling relates solely to an issue of discovery. The Court will review it under the clearly erroneous standard.

### III.   Discussion

The Court first reviews the applicable standard for discovery disputes. The Magistrate Court correctly laid out the relevant standards. A party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Trial courts are afforded broad discretion to regulate discovery. *Pub. Loan Co., Inc. v. Federal Deposit Ins. Corp.*, 803 F.2d 82, 86 (3d Cir. 1986). A trial court abuses this discretion if its order "interfere[s] with a substantial right" or the court commits "a gross abuse of discretion resulting in fundamental unfairness." *Marroquin-Manriquez v. Immigration & Naturalization Serv.*, 699 F.2d 129, 134 (3d Cir. 1983). Relevant information sought in discovery need not be admissible at trial, as long as it "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Relevance is generally "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Funds v. Sanders*, 437 U.S. 340, 351 (1978).

"A party wishing to obtain an order of protection over discovery material must demonstrate that 'good cause' exists for the order of protection." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (citing Fed. R. Civ. P. 26(c); *Smith v. Bic Corp.*, 869 F.2d 194, 199 (3d Cir. 1989)). The Third Circuit advises courts to balance the "requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled." *Id.* (internal citations omitted). In assessing this balance, it is appropriate for the court to consider "whether the information is being sought for a legitimate purpose or for an improper purpose." *Id.*

### a. Reviewing *de novo*, the Court reverses the Magistrate Court's denial of the Motion to Compel deposition of Walgreen employees involved in the prescriber profile system.

Plaintiff has moved to compel the deposition of Robin Wheeler and eight additional Walgreen employees who made entries on Plaintiff's prescriber profile. (Pl. Mot. at 4-7.) Ms. Wheeler is alleged to have removed the comment, "Under investigation by DEA," from the Plaintiff's prescriber profile in 2009 and 2010. (Defs. Supp. at 5.) The other eight employees appear in Walgreen's profile system as "creators of file comments pertaining to plaintiff,

including the allegedly defamatory comment pertaining to the DEA investigation of plaintiff." (Defs. Supp. at 5.) Defendant moved to strike Plaintiff's notices of depositions of these Walgreen employees. (Defs. Mot. at 1.)

Plaintiff argues that these "employees each played a role in updating the profile as late as May 2014…[and] that their testimony is relevant to the claims in this case." (Pl. Resp. to Def. Mot. for Protective Order at 6.) Such testimony would presumably elucidate whether the information at issue was entered negligently or not, maliciously or not, etc.

Defendants, in contrast, argue that this request goes beyond the scope of Plaintiff's claims. Defendants argue:

> "Walgreen has produced copies of the prescriber profile containing the notation in question and other references pertaining to the plaintiff in 2013. Walgreen does not object to the depositions of the employees alleged to have published the comments or to deposition questions posed to the aforesaid employees about the prescriber profile system. However, plaintiff is attempting to conduct additional, burdensome discovery into Walgreen's prescriber profile system…Statements, notations, or comments contained within Walgreen's prescriber profile system are not actionable unless and until they are published to a third party. Therefore, the scope of plaintiff's discovery should be limited to any comments that plaintiff alleges were published by Walgreen employees to third parties within the statute of limitations." (Defs. Supp. at 2.)

The Court agrees with Defendants that "[i]n as much as any unpublished statements in the prescriber profile system are not actionable, plaintiff should not be permitted to conduct time consuming, expensive discovery into the system." (Defs. Supp. at 4.) It is evident that the parties differ on (1) which claims are actionable and (2) what the relevant period of limitations is.

The Court notes that Defendants have not moved for dismissal. Thus, at this moment, the Court is not deciding whether the comments in the prescriber profile were in fact published or whether the statute of limitations was in fact tolled. It would not be appropriate to address such issues at this time. Instead, the postures of the pending motions are whether Plaintiff's requested discovery is relevant to the pending claims.

Given that this Court finds that Plaintiff has plainly pled a theory of liability related to the comments in the prescriber profile system themselves, some discovery as to this point will obviously be permissible. However, as Defendants note, Plaintiff is only entitled to discovery related to the actual comments that were in fact published. According to Plaintiff's Amended Complaint, on May 1, 2009, July 23, 2010, Defendants' prescriber profile system stated that Plaintiff was "under investigation by the Drug Enforcement Agency." (AC ¶ 16, 19.) On three

9

distinct instances in 2013, Defendants' prescriber profile system again stated that Plaintiff was "under investigation by the Drug Enforcement Agency." Plaintiff is entitled to discovery relating to this statement, "under investigation by the Drug Enforcement Agency" on these five occasions, including the comments in 2009 and 2010.[2]

At this point, the information provided to both Plaintiff and the Court by Defendants provides no good cause argument why it would be unduly burdensome for Plaintiff to depose Ms. Wheeler and all eight employees. If Defendants were able to clarify which of these nine persons added the allegedly defamatory comments to the profile, then Plaintiff would only be entitled to depose that person. However, without such specific information, it is reasonable for Plaintiff to seek the deposition of all nine persons. Plaintiff specifically pled that "[i]n making the requests for individuals identified in the prescriber profile, plaintiff limited the request to those individuals who were identified in those sheets of the prescriber profile which stated that plaintiff was 'Being investigated by DEA.'" (Pl. Mot. ¶ 38(f).) Without further information provided by Defendants, this approach seems inherently reasonable to the Court.

Defendants have not shown good cause to protect such persons from deposition. Therefore, Plaintiff's Motion to Compel the depositions of Robin Wheeler and the other eight employees is hereby GRANTED and Defendants' Motion for Protective Order as to these employees is hereby DENIED.

### b. Reviewing *de novo*, the Court reverses the Magistrate Court's denial of the Motion to Compel deposition of the former in-house counsel.

The Magistrate Court denied Plaintiff's Motion to Compel the depositions of two in-house counsel for Defendants by holding that "what the attorneys 'relied on' does not appear to be relevant to Plaintiff's defamation claim….Plaintiff's cause of action concerns only the pharmacists' allegedly defamatory statements to Plaintiff's patients." As previously addressed, the Court finds that under Plaintiff's Amended Complaint, Plaintiff has pled two theories of liability for defamation. One theory concerns "only the pharmacists' allegedly defamatory

---

[2] Defendants argue that the statute of limitations has run on Plaintiff's 2009 and 2010 claims. (Defs. Resp. to Pl. Mot. at 4.) "In Pennsylvania, the statute of limitations for defamation claims is one year from the date of publication." *Manno v. Am. Gen. Fin. Co.,* 439 F.Supp.2d 418, 432 (E.D. Pa.2006). Even if 2009 and 2010 are beyond the scope of the statute of limitations – of which the Court asserts no opinion – it is "not uncommon to have discovery for a time preceding the statutory limitations period." *Kane v. United Independent Union Welfare Fund*, 1997 WL 611584 at *3 (E.D. Pa. 1997).

statements to Plaintiff's patients." However, the second theory concerns the statements on the prescriber profile that were allegedly repeated by the pharmacists to Plaintiff's patients. In his appeal, Plaintiff argues that the "questioning of these two attorneys with respect to what they relied upon, when Stacey wrote directly to plaintiff, and Freeman spoke directly to the paralegal for plaintiff's attorney, goes directly to the issue of the statute of limitations." (Pl. App. ¶ 77.) The Court agrees. What the attorneys relied upon relates to the statute of limitations under the second theory of liability. What the attorneys relied upon also relates to the intent requirement for punitive damages. Moreover, the Court finds that Plaintiff did argue that he sought these depositions in order to further develop these theories.

That said, the Magistrate Court correctly noted that to the extent that "Plaintiff seeks to learn more about the communications Attorneys Freeman and Stacey had with Walgreen employees in response to the 2009 and 2010 letters from Plaintiff's attorneys, such communications are likely protected by the attorney-client privilege…Similarly, documents that Attorneys Freeman and Stacey prepared in response to Plaintiff's threatened lawsuit were prepared in anticipation of litigation and not discoverable absent further showing of substantial need by Plaintiff." (MJ Memo at 9-10.) The Court further agrees with the Magistrate Court that "attorneys' statements simply do not amount to waivers" of this privilege or the work product doctrine. (MJ Memo at 10.)

Thus, Plaintiff's Motion to Compel the depositions of the two in-house Attorneys Freeman and Stacey is GRANTED insofar as such depositions query matters not protected by attorney-client privilege or such requests do not violate the protections of the work product doctrine. Defendants' Motion for Protective Order as to these employees is hereby DENIED.

    **c. Reviewing for clearly erroneous error, the Court affirms the Magistrate Court's dismissal as moot of the Motion to Compel deposition of a corporate designee.**

The Court affirms the Magistrate Court's reasoning as to this issue. The Magistrate Court dismissed this request as moot. Plaintiff has the right to refile if the circumstances have changed. Plaintiff's Motion to Compel the deposition of a corporate designee is DENIED AS MOOT and Defendants' Motion for Protective Order as to this designee is hereby DENIED AS MOOT.

        BY THE COURT:

        /s/ C. Darnell Jones, II

        _____

        C. Darnell Jones, II   J.