UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LANCE YARUS, D.O. | : | CIVIL ACTION |
| | : | |
| Plaintiff | : | NO. 2:14 – CV – 01656 - CDJ |
| | : | |
| v. | : | |
| | : | |
| WALGREEN COMPANY AND WALGREEN | : | JURY DEMAND |
| EASTERN CO., INC., | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO ADD JAMES TINNYO, ESQUIRE
AND THOMAS, THOMAS & HAFER, LLP
TO VERDICT SLIP OR, IN THE ALTERNATIVE,
FOR JOINDER OF SAID PARTIES OF
DEFENDANTS WALGREEN CO. AND WALGREEN EASTERN CO., INC.**

## I.   PROCEDURAL HISTORY

Plaintiff, Lance Yarus, D.O. commenced this defamation action against Walgreen Co.

and Walgreen Eastern Co., ("Walgreen"), in the Philadelphia Court of Common Pleas on

November 26, 2013 by filing a writ of summons and subsequently filed the complaint on

February 26, 2014. Walgreen removed the case to this Court on March 20, 2014.

On May 2, 2014, plaintiff filed a motion for leave to file an amended complaint, joining

Walgreen Eastern Co., Inc. as a defendant. The Court granted plaintiff's motion and on May 16,

2014, plaintiff filed the amended complaint, joining Walgreen Eastern Co., Inc. Walgreen filed

its answer to the amended complaint on June 17, 2014.

## II.    FACTS/BACKGROUND

Plaintiff is a doctor with a practice focusing mainly on pain management and litigation in the context of worker's compensation and personal injury lawsuits. The foundation of plaintiff's claim consists of his allegations that Walgreen pharmacists refused to fill prescriptions for narcotics written by plaintiff for patients. When the patients requested an explanation for the alleged refusal to fill the prescription, the pharmacists allegedly stated that plaintiff was under investigation by the DEA or that he fills too many narcotic prescriptions.

On September 25, 2013, plaintiff filed a lawsuit captioned *Yarus v. James Tinnyo, Esquire and the Law firm of Thomas, Thomas & Hafer*, ("the Tinnyo action"), in the Philadelphia Court of Common Pleas, docketed at 130902964. In the *Tinnyo* action, plaintiff alleges that Attorney James Tinnyo called him a "cokehead" after Mr. Tinnyo cross examined plaintiff in a deposition. *See* pp. 48, 49 of July 21, 2014 deposition of plaintiff in the *Tinnyo* action, attached as Exhibit A.

In his lawsuit against Walgreen, plaintiff alleges that the aforesaid alleged remarks by Walgreen pharmacists caused him to sustain emotional distress leading to a heart attack on April 17, 2014.

In the *Tinnyo* action, plaintiff alleges that the aforesaid remark by Mr. Tinnyo also caused him to sustain emotional distress leading to a heart attack on April 17, 2014. Plaintiff testified that the stress caused by Mr. Tinnyo caused him to seek treatment with psychologist Paul Dikun, Ph.D. (Exhibit A, pp. 201 - 203). Plaintiff testified that the stress caused by Mr. Tinnyo clogged his blood vessels, which led to a heart attack. (Exhibit A, pp. 145 – 161). Plaintiff produced an expert report by Dr. DiKun in both lawsuits, in which Dr. Dikun opines that both Mr. Tinnyo and

Walgreen caused him to suffer a psychological injury. (Exhibit B); Plaintiff produced an expert report by cardiologist Nicholas DePace, M.D. in both lawsuits, in which Dr. DePace opines that both Mr. Tinnyo and Walgreen caused plaintiff to sustain a heart attack. (Exhibit C).

Therefore, plaintiff alleges the exact same personal injuries caused by the Tinnyo defendants and by Walgreen.

On April 1, 2015, plaintiff settled the lawsuit of *Yarus v. James Tinnyo, Esquire and the law firm of Thomas, Thomas & Hafer*, in the Philadelphia Court of Common Pleas, docket no. 130902964. (Exhibit D).

On April 21, 2015, defense counsel served plaintiff's counsel with supplemental interrogatories and document requests, requesting a copy of the release from the *Tinnyo* case. (Exhibit E). Plaintiff objected to the discovery and refused to produce the release or answer the interrogatories. (Exhibit F). Therefore, on May 13, 2015, Walgreen filed a motion to compel the release. (document no. 72). After briefing and a telephone conference with counsel and Honorable Lynne A. Sitarski, on June 22, 2015, plaintiff's counsel produced an unsigned copy of the "Joint Tortfeasor Release, Confidentiality and Indemnity Agreement," from the case of *Yarus v. James Tinnyo, Esquire and the law firm of Thomas, Thomas & Hafer*, ("the release"), with only the amount of the settlement redacted. (Exhibit G).

The Release acknowledges that the Tinnyo defendants and Walgreen are potentially joint tortfeasors and fully releases the Tinnyo defendants from any liability to plaintiff or any other parties with regard to plaintiff's alleged damages:

> ...[I]f Releasees were joined or any Released party were joined or otherwise made a party to the *Yarus v. Walgreens* matter and if it were adjudicated in the *Yarus v. Walgreens* matter ... that any and all Releasees were found to be a joint

3

tortfeasor(s) or committed any act or omission jointly with any other party, person or entity which caused or contributed to Releasor's alleged damages, losses or expenses, or should it appear or be adjudicated that any and all Releases are otherwise liable to any other person, party or entity for Releasor's alleged damages, losses or expenses, then as a further consideration for the Settlement Payment made by Releasees, the Releasor agrees to reduce the Releasor's total damage award at trial, and/or Releasor agrees that he will reduce his claim or satisfy any verdict or judgment in favor of Releasor to the extent necessary to fully satisfy and eliminate liability of Releasees to Releasor or any other party, and to the extent necessary to fully and completely eliminate liability of Releasees to any other party, person or entity for Releasor's damages. It is the intent of Releasor that Releasees be relieved of liability for contribution or indemnity to any person or entity, and Releasees shall never be obligated to pay Releasor, or any other person or entity, anything more than the consideration given for this Release.

It is further understood that if Releasees are joined or otherwise made a party to the Y*arus v. Walgreens* matter and if it were adjudicated in the *Yarus v. Walgreens* matter … that any and all Releasees is/are found to be a joint tortfeasor(s) or committed any act or omission jointly with any other party, person or entity which caused or contributed to Releasor's alleged damages, losses or expenses, Releasor specifically agrees to mold any recovery which may be awarded, or verdict and/or judgment which may be entered against any other party  in *Yarus v. Walgreens*, … that Releasees shall never be obligated to pay anything more than the consideration for this Release.

In the event that any other party, person or entity in the *Yarus v. Walgreens* matter,  were found jointly liable to and/or a joint tortfeasor with Releasees for Releasor's  alleged damages incurred in connection with and/or related to the subject Legal Action, then this Release shall operate as a satisfaction of Releasor's claims against Releasees and against all other parties, persons or entities to the extent of the amount of Releasees's adjudicated percentage share or percentage of the total liability and damages as established by adjudication.  It is agreed by Releasor that any verdict rendered against and other party, person or entity in *Yarus v. Walgreens* …shall be reduced by the adjudicated  percentage share of the Releasees's liability, and any judgment entered on the verdict shall be in the amount of the verdict reduced by the adjudicated percentage share(s) of the Releasee's liability. …

…

To give full force and effect to these stated intentions, it is understood and agreed that Releasor specifically agrees to mold any recovery which may be awarded, or

verdict and/or judgment which may be entered in the *Yarus v. Walgreens* matter
… to ensure that Releasees shall never be obligated to pay to Releasor, or any
other person or entity, anything more than the payment stated in this Joint
Tortfeasor release, Confidentiality, and Indemnity Agreement.

(Exhibit G).

## III.    SUMMARY OF ARGUMENT

Walgreen should be permitted to present evidence to the jury that plaintiff and his experts
have alleged the same damages against Walgreen as they have alleged against the Tinnyo
defendants, permitting the jury to decide what if any damages were caused by Walgreen as
opposed to the Tinnyo defendants.  In fact, the jury would not be fully informed and would not
be able to fairly assess any damages against Walgreen without being presented with the evidence
of Mr. Tinnyo's alleged defamation and the damages that plaintiff alleges it caused. When
presented with the evidence pertaining to Mr. Tinnyo's alleged defamation, the jury could find
that all or some of plaintiff's alleged damages were caused by the Tinnyo defendants, not
Walgreen. Therefore, the jury should be given the opportunity to apportion the damages, if any,
between Walgreen and the Tinnyo defendants.

## A.    Walgreen Should Be Permitted To Add The Tinnyo Defendants To The Verdict Slip.

In order for the jury to have the opportunity to apportion damages between Walgreen and
the Tinnyo defendants, the Tinnyo defendants should be on the verdict slip. However, there is no
reason for the *pro forma* joinder of the Tinnyo defendants in as much as plaintiff has agreed to
reduce any verdict by the adjudicated  percentage share of the Tinnyo defendants' liability, so

5

that the Tinnyo defendants do not face any financial exposure whatsoever from their names

being placed on the verdict slip.

**B.      If The Court Finds That Joinder Is Necessary In Order To Add The Tinnyo Defendants To The Verdict Slip, Then Walgreen Requests Permission To Join The Tinnyo Defendants.**

Alternatively, if the Court should decide that the Tinnyo defendants cannot be placed on

the verdict slip absent their joinder, then Walgreen respectfully requests permission to file a third

party complaint, joining the Tinnyo defendants to this action. If the Tinnyo defendants are joined

in this matter, that would permit the damages issues to be fully resolved at trial and avoid the

possible need for a second lawsuit, on the identical issues, for contribution.

**IV.     ARGUMENT**

**A.      Walgreen Should Be Permitted To Add The Tinnyo Defendants To The Verdict Slip.**

If Walgreen is found liable for plaintiff's alleged psychological/emotional injury and

April 17, 2014 heart attack, then Walgreen and the *Tinnyo* defendants are joint tortfeasors:

> Joint tortfeasors are two or more persons jointly or severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them. 42 Pa.C.S. §8322.  Under Pennsylvania law, two actors are joint tortfeasors if their conduct causes a single harm which cannot be apportioned ... even though [the actors] may have acted independently. *Rabatin v. Columbus Lines, Inc.,* 790 F.2d 22, 25 (3rd. Cir, 1986) (quoting *Capone v. Donovan*, 332 Pa. Super. 185, 189, 480 A.2d 1249, 1251 (1984)).

*National Railroad Passenger Corporation v. TriState Environmental Management Services, Inc.*,

528 F. Supp. 2d 525 (E.D. Pa. 2007).

6

If Walgreen and the Tinnyo defendants are found to be joint tortfeasors, then Walgreen is entitled to an offset: "A release by the injured person of one joint tort-feasor, whether before or after judgment, … reduces the claim against the other tort-feasors in the amount of the consideration paid for the release or in any amount or proportion by which the release provides that the total claim shall be reduced if greater than the consideration paid." 42 Pa.C.S.A. §8326.

In the Tinnyo Release, plaintiff conceded that Walgreen and the Tinnyo defendants are or may be joint tortfeasors. Therefore, if the jury should find that plaintiff sustained recoverable damages caused by Walgreen and the Tinnyo defendants, Walgreen would be entitled to an offset based on the settlement amount or share of liability of the *Tinnyo* defendants, without joining the *Tinnyo* defendants. *See Griffin v. United States of America*, 500 F.2d 1059 (3rd Cir. 1974).

In *Griffin, supra,* the Third Circuit explained that, when a plaintiff agrees in a release that the released party is or may be a joint tortfeasor with other defendants in a separate action, and further agrees to reduce any judgment against those other defendants by the pro rata share of the released party, then the verdict against the other defendants is reduced by the pro rata share of the released party, whether or not the released party is joined as a defendant in the separate action. *Griffin, supra* at 1071 – 1073. The *Griffin* release stated:

> In order to avoid inconvenience and expense to the released party, Pfizer Inc., in any action in which the said Pfizer Inc. is or may be a defendant or third party defendant together with other alleged tortfeasors, it is further agreed by us that any verdict rendered against the other alleged tortfeasors shall be reduced by the pro – rata share of the party released herein, Pfizer Inc. and any judgment entered on said verdict shall be in the amount of the verdict reduced by the pro-rata share of the party released herein, whether or not the released party herein was in fact a joint tortfeasor.

7

*Griffin, supra* at 1072. The Third Circuit explained that the language cited in the Griffin's release

constitutes a waiver of the Griffin's right to insist upon a judicial determination of Pfizer, Inc.'s

joint tortfeasor status. *Griffin, supra* at 1073. A *Griffin* release does not admit liability but does

constitute a waiver by the plaintiff of the plaintiff's right to have the joint tortfeasor status of

non-released parties judicially determined. In order for the released party to avoid the need to

remain in the case or be joined as a defendant in another action, the plaintiff admits to the joint

tortfeasor status of other defendants in the release. *Id.* at 1072.

When a plaintiff enters into a *Griffin* release, the defendants/potential joint tortfeasors in

the separate action do not need to join the released defendants, in as much as the joinder would

be *pro forma*, as explained in *Griffin, supra:*

> The district court refused to give effect to the foregoing language in the release
> because it believed it inoperative until Pfizer was actually made a party to the
> Griffin v. United States action.  The language of the provision on this point is
> ambiguous.[1] It is unclear whether this language contemplates that Pfizer be in fact
> made a defendant of record.  Even if we construe the language as contemplating a
> requirement of Pfizer's joinder, however, had the United States attempted to join
> Pfizer, the latter, under the terms of the release, could have obtained a dismissal.
> We see no reason to deny to the United States the benefits of the release because
> of its failure to make a pro forma motion for joinder.

*Griffin, supra at 1072, 1073.*

Pursuant to the terms of the Tinnyo Release, plaintiff has acknowledged that, if Walgreen

is found liable to plaintiff, then Walgreen is a joint tortfeasor.  For instance, the Release states:

> To give full force and effect to these stated intentions, it is understood and agreed
> that Releasor specifically agrees to mold any recovery which may be awarded, or
> verdict and/or judgment which may be entered in the *Yarus  v.  Walgreens* matter
> … to ensure that Releasees shall never be obligated to pay to Releasor, or any
> other person or entity, anything more than the payment stated in this Joint
> Tortfeasor release, Confidentiality, and Indemnity Agreement.

---

[1] "in any action in which the said Pfizer Inc. is or may be a defendant…"

8

(Exhibit G).

Plaintiff has therefore waived his right to insist on a judicial determination of joint tortfeasor status: If Walgreen is found liable, plaintiff agrees to mold the verdict to protect the Tinnyo defendants. *See, Crider v. Black & Decker* 1995WL366097 (E.D. Pa.) (By entering into a *Griffin* release, the plaintiffs had conceded the joint tortfeasor status of the settling party for purposes of determining damages from another defendant).

In light of plaintiff's concession that the Tinnyo defendants and Walgreen are potentially joint tortfeasors, the jury need not determine the joint tortfeasor status of the parties but must determine only whether or not plaintiff sustained any recoverable damages and if so, by which defendants and in what proportion.

In as much as plaintiff and his experts accuse both the Tinnyo defendants and Walgreen of causing the same damages, those alleged damages are intertwined. The jury must be permitted to hear all of the damages evidence in order to make an informed assessment of damages, if any. Therefore, the names of the Tinnyo defendants should be added to the verdict slip.

There is no reason to join the *Tinnyo* defendants in this case. If the jury should determine that plaintiff's alleged damages were caused by the Tinnyo defendants and Walgreen, plaintiff will reduce the verdict amount to fully protect the Tinnyo defendants. In as much as the Tinnyo defendants face no potential verdict exposure, their joinder would be *pro forma*.

9

**B.    If The Court Finds That Joinder Is Necessary In Order To Add The Tinnyo Defendants To The Verdict Slip, Then Walgreen Requests Permission To Join The Tinnyo Defendants.**

Alternatively, if the Court should decide that the Tinnyo defendants cannot be placed on

the verdict slip absent their joinder, Walgreen respectfully requests permission to file a third

party complaint, joining the Tinnyo defendants to this action.

In discussing the rational for joinder of third party defendants, the Middle District of

Pennsylvania recently stated:

> Rule 14[2] 'is designed  to reduce multiplicity of litigation,' and 'should be construed liberally.' *Hanhouser v. United States*, 85 F.R.D. 89, 90 (M.D. Pa. 1979) (*citing Tower Mfg. Corp. v. Reynolds,* 81 F.R.D.560, 561 (W.D. Okla. 1978). The goal is to prevent the need for a defendant, after being held liable to a plaintiff, to 'bring a separate action against a third individual who may be liable to defendant for all or part of plaintiff's original claim. 6  Charles Alan Wright et al., Federal Practice and Procedure §1442 (3d ed. & sup. 2010). When a third party's liability depends on largely the same facts and law as does the defendant's in a case, joining the third-party defendant enables the court and the parties to 'save the time and cost of a reduplication of evidence, to obtain consistent results from, identical or similar evidence, and to do away with the serious handicap to a defendant of a time difference between judgment against him, and a judgment in his favor against the third - party defendant.' Jones v. Waterman SS Corp., 155 F.2d 992, 997 (3d Cir. 1946) (quoting 1 Moore's Federal Practice 740 )1938). Third –party practice 'is intended to facilitate, not to preclude, the trial of multiple claims that otherwise would be triable only in separate proceedings.' U.S. v. Yellow Cab. Co. 340 U.S. 543, 556, 71 S. Ct. 399, 95 L. Ed. 523 (1951).

*Crowder v. Emerson Electric Company*, 2010 WL 4916135.

If the Tinnyo defendants are joined in this matter, (if the Court deems joinder necessary),

that would permit the damages issues to be fully resolved at trial and avoid the possible need for

a second lawsuit, on the identical issues, for contribution.

---

[2] The Middle District was discussing local Rule 14, which is not identical to the Eastern District's local rule 14.1 but the reasoning underlying joinder is the same.

In deciding whether to permit late joinder, the federal courts apply four factors: (1) Possible prejudice to the plaintiff; (2) Complication of issues at trial; (3) Probability of trial delay; (4) timeliness of the motion to implead. *Crowder v. Emerson Electric Company, supra,* (citing cases).

The joinder of the Tinnyo defendants would cause no prejudice to plaintiff. Plaintiff has litigated his suit against the Tinnyo defendants, with his same counsel and has used the same experts in both cases. Plaintiff settled the Tinnyo action after the close of fact and expert discovery.

The joinder of the Tinnyo defendants would cause no additional complications at trial. The evidence of the alleged defamation by Mr. Tinnyo and alleged damages caused by that defamation are an integral part of this matter, in that plaintiff alleges the same damages against the Tinnyo defendants and Walgreen. Therefore, with or without the joinder of the Tinnyo defendants, the evidence of the alleged defamation by Mr. Tinnyo and alleged damages caused by that defamation will be offered into evidence at trial.

The joinder of the Tinnyo defendants would cause no delay. For instance, pursuant to the terms of the Release, the Tinnyo defendants face absolutely no financial exposure, thus would have no basis to conduct pre-trial discovery or seek an extension of the existing pre-trial deadlines.

Joinder of the Tinnyo defendants became feasible to the defense upon learning the terms of the Release on June 22, 2015. *See, e.g., Crowder v. Emerson Electric Company, supra.* (Permitting joinder sixteen months after the filing of the complaint); *Zielinski v. Zappala,* 470 F.

Supp. 351 (E.D. Pa. 1979) (Permitting joinder sixteen months after the filing of the defendant's answer).

Regardless of the citizenship of the Tinnyo defendants, their joinder will not destroy diversity: White v. Pulver Systems, Inc., 1997WL5184 (E.D. Pa.), *citing Sheppard v. Atlantic States Gas Co.*, 167 F.2d 841, 845 (3rd Cir. 1948) (An identity of citizenship between an original plaintiff and a third party defendant does not destroy diversity jurisdiction.

## V.    Conclusion

 Walgreen should be permitted to present evidence to the jury that plaintiff and his experts have alleged the same damages against Walgreen as they have alleged against the Tinnyo defendants, permitting the jury to decide what if any damages were caused by Walgreen as opposed to the Tinnyo defendants. In fact, the jury would not be fully informed and would not be able to fairly assess any damages against Walgreen without being presented with the evidence of Mr. Tinnyo's alleged defamation and the damages that plaintiff alleges it caused. When presented with the evidence pertaining to Mr. Tinnyo's alleged defamation, the jury could find that all or some of plaintiff's alleged damages were caused by the Tinnyo defendants, not Walgreen. Therefore, the jury should be given the opportunity to apportion the damages between Walgreen and the Tinnyo defendants.

For the above reasons, Walgreen does not believe the *pro forma* joinder of the Tinnyo defendants is necessary. If however, the Court determines that joinder is necessary, Walgreen requests permission to promptly file a joinder complaint.

LITCHFIELD CAVO LLP

BY: */s/ Robert L. Sanzo*
Robert L. Sanzo, Esquire
Attorneys for Defendants,
Walgreen Co. and
Walgreen Eastern Co., Inc.

Dated:   July 1, 2015

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LANCE YARUS, D.O. | : | CIVIL ACTION |
| | : | |
| Plaintiff | : | NO. 2:14 – CV – 01656 - CDJ |
| | : | |
| v. | : | |
| | : | |
| WALGREEN COMPANY AND WALGREEN EASTERN CO., INC., | : | JURY DEMAND |
| | : | |
| | : | |
| Defendants | : | |

## CERTIFICATE OF SERVICE

I, Robert L. Sanzo, Esquire, do hereby certify that the foregoing

Defendants,' Walgreen Co. and Walgreen Eastern Co., Inc. Motion to Add James Tinnyo,

Esquire and Thomas, Thomas & Hafer, LLP to the Verdict Slip or, in the Alternative, for

Joinder of Said Parties with Memorandum of Law was electronically filed with the Court

and served on all counsel as noted below:

> Stephen R. Bolden, Esquire
> Fell & Spalding
> 100 South Broad Street, Suite 2230
> Philadelphia, PA 19110
> (*simultaneously via the court's electronic filing system*)

> John Innelli, Esquire
> John Innelli, LLC
> 1818 Market Street, Suite 3740
> Philadelphia, PA 19103
> (*simultaneously via the court's electronic filing system*)

> LITCHFIELD CAVO LLP

> BY: */s/ Robert L. Sanzo*
> Robert L. Sanzo, Esquire
> Attorneys for Defendants,
> Walgreen Co. and
> Walgreen Eastern Co., Inc.

Dated:   July 1, 2015