IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LANCE YARUS, D.O.,                    :
                  Plaintiff,          :
                                      :          CIVIL ACTION
      v.                              :          NO. 14-1656
                                      :
WALGREEN COMPANY et al.,              :
                  Defendants.         :

Jones, II      J.                                          October 9, 2015

## MEMORANDUM

Lance Yarus, D.O. ("Plaintiff") sued Walgreen Company and Walgreen Eastern Co., Inc. (collectively "Defendant"). (Dkt No. 10, Pl. Amended Compl. [hereinafter AC].) Upon consideration of Defendant's Motion for Summary Judgment, (Dkt No. 83 [hereinafter MSJ]), and Memorandum of Law in Support thereof, (Dkt No. 83-2 [hereinafter MSJ Mem.]), and Plaintiff's Response, (Dkt No. 89 [hereinafter Resp.]), and Memorandum of Law in Support thereof, (Dkt No. 89-31 [hereinafter Resp. Mem.]), the Court GRANTS IN PART AND DENIES IN PART Defendant's Motion.

## I.        Standard of Review

Under Fed. R. Civ. P. 56(a), a court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine [dispute] as to any material fact and that the moving party is entitled to a summary judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). In order to defeat a motion for summary judgment, disputes must be both (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law, and (2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. A dispute is genuine if the fact finder could reasonably return a verdict in favor of the nonmoving party with respect to that issue. *Anderson*, 477 U.S. at 248. In reviewing a motion for summary judgment, the court "does

not make credibility determinations and must view facts and inferences in the light most favorable to the party opposing the motion." *Seigel Transfer, Inc. v. Carrier Express*, Inc., 54 F.3d 1125, 1127 (3d Cir. 1995).

## II.     Statement of Facts

Plaintiff is an orthopedic surgeon whose practice focuses on pain management. (MSJ ¶ 5; Resp. ¶ 5.) On November 26, 2013, Plaintiff commenced this action by filing a writ of summons in the Philadelphia Court of Common Pleas, and, subsequently, a complaint on February 26, 2014. (MSJ ¶ 2; Resp. ¶ 2; Dkt No. 1, Ex. A.) On March 20, 2014, Defendant removed this case to this Court. (Dkt No. 1.) On May 2, 2014, Plaintiff filed a motion to amend the complaint, (Dkt No. 7), which the Court granted on May 13, 2014. (Dkt No. 9.) On May 16, 2014, Plaintiff filed an Amended Complaint. (AC.)

The Amended Complaint alleged that Defendant's internal computer system, which provides pharmacists with information on prescribing physicians, contained the comment that Defendant was "under investigation by the DEA," which certain Defendant's pharmacists repeated to Plaintiff's patients across five instances, (AC ¶¶ 43-56), occurring on (1) May 1, 2009, (AC ¶ 16), (2) July 23, 2010, (AC ¶ 19), (3) March 22, 2013, (AC ¶¶ 37-42), (4) June 13, 2013, (AC ¶¶ 23-26), (5) December 19, 2013. (AC ¶¶ 27-36.) In Plaintiff's Answers to Interrogatories, he clarified the following dates with the following people: (1) statements made on May 1, 2009 to Carolyn Bailey, (Dkt No. 89-2 [hereinafter Pl. Interrog.] ¶ 3), (2) statements made on July 23, 2010 to Fred Bartley and Jason Robinson, (Pl. Interrog. ¶ 7), (3) statements made on March 22, 2013 and March 23, 2013 to Damian Zajac, (Pl. Interrog. ¶ 132), (4) statements made on June 13, 2013 to Jeffrey Grosso, (Pl. Interrog. ¶ 11), (5) statement made on December 19, 2013 to Karen Gondos. (Pl. Interrog. ¶ 12.) Plaintiff alleged that the statute of limitations was tolled by Defendant's affirmative misrepresentations that the comments had been removed from the system. (AC ¶¶ 57-71.) Plaintiff further alleged that Defendant interfered with his present contractual relationships. (AC ¶¶ 72-76.)

The Court recites the following facts that are either undisputed or are disputed, but that Defendant takes as true for the purposes of its Motion. The Court notes that Defendant specifically disputes the statements attributed to Defendant's pharmacists and in-house counsel. (MSJ ¶ 9.)

2

### a.  Prescriber Profile

Defendant maintains an internal computer system that provides its pharmacists with prescriber profiles for prescribing physicians, including Plaintiff. (Email from James Moore to John Innelli, Sept. 15, 2014, Dkt No. 89-16; Field Name Explanation, Dkt No. 89-17; Prescriber Profile for Dr. Yarus, Dkt No. 89-18 [hereinafter Prescriber Profile].) At various times, the prescriber profile for Plaintiff stated that Plaintiff was "BEING INVESTIGATED BY DEA," (Prescriber Profile at 5, 8, 20, 29), and at other times that Plaintiff was "BEING INVESTIGATED BY THE DEA!!!!" (Prescriber Profile at 11-12.) At what times these comments were added, removed, and/or re-entered into the system remain disputed, material issues of fact. For the purposes of this Motion, Defendant takes as true that the comments were entered at some time during or before 2009 and remained in, or were reentered into, the system through the events in this litigation. (MSJ ¶ 48.)

### b.  May 1, 2009 Incident

Plaintiff alleges that on May 1, 2009, his patient, Caroline Bailey, went to Defendant's pharmacy and was informed that Plaintiff was under investigation by the DEA. Ms. Bailey was not deposed, nor has she filed an affidavit. The pharmacist who allegedly said this comment to her has not been identified. In place of such evidence, Plaintiff points instead to deposition testimony of his former counsel and a series of emails written and received by his former counsel.

In May of 2009, Plaintiff told Linda M. Shick, Esq., his former counsel, that a patient of Plaintiff's told Plaintiff that, on May 1, 2009, the patient had been told by a pharmacist employed by Defendant that the pharmacist would not fill a prescription written by Plaintiff because Plaintiff "was red flagged" and "being investigated by the DEA." (Linda M. Shick, Deposition, April 20, 2015, Dkt No. 89-3 [hereinafter Shick Dep.) 8:7-12; 13:3-12.) On May 7, 2009,[1] Ms. Shick wrote to Defendant that: "On May 1, 2009, a patient of Dr. Yarus was advised by the Walgreens pharmacy located at 2014 S. Broad Street in Philadelphia that prescriptions written by Dr. Yarus would not be filled as Dr. Yarus is under investigation by the Drug

---

[1] The letter states that the date was May 7, 2008; however, all parties agree that the actual date of the letter was May 7, 2009. (*See* Shick Dep. 12:14-18.)

Enforcement Agency (DEA)." (Shick Dep. 13:3-9; Ltr. from Ms. Shick to Def's Legal Dept., May 7, 2009, Dkt No. 89-6.)[2]

On August 17, 2009, Ms. Shick had a phone conversation with Michael Freeman, then counsel for Defendant. (Shick Dep. 18:2-7.) Ms. Shick recorded that Mr. Freeman told her on the call that "the 'remark' [on the prescriber profile]…that Dr. Yarus was under investigation by the department – Drug Enforcement Agency had been removed from the Walgreens' computer and…Walgreens [] had counseled all staff and reprimanded them." (Shick Dep. 21:11-20.) Further, Ms. Shick recorded that Mr. Freeman told Ms. Shick that Defendant's "computer system does not hold history so they had no idea how the remark was put on." (Shick Dep. 21:21-23.) He further apologized. (Shick Dep. 21:25-22:3.) Ms. Shick advised Plaintiff of her conversation with Mr. Freeman. (Shick Dep. 22:22-23:6.)

**c. July 23, 2010 incidents**

Plaintiff alleges that on July 23, 2010, a pharmacist at Defendant's store refused to fill prescriptions for two of Plaintiff's patients, Fred Bartley and Jason Robinson. Neither patient was deposed. The identity of the pharmacist is unknown. Plaintiff points to the following evidence to substantiate these claims.

First, Plaintiff points to office records reporting phone calls from both patients about the incident, and a subsequent conversation with the pharmacist who refused to fill the prescription. According to a handwritten note recorded by one of Plaintiff's employees, on July 29, 2010, pharmacist "Julie" from Defendant's store explained that she had refused to fulfill prescriptions for Fred Bartley and Jason Robinson because Plaintiff was "under investigation by DEA." (Plaintiff's Office Note, July 29, 2010, Dkt No. 89-12.)

---

[2] The Court further notes that Plaintiff alleges that he has evidence of this May 1, 2009 incident in the form of office records recording a call with Ms. Bailey. Michelle Casdia, Billing and Administrative Assistant, testified in her deposition that if a "patient called and said, I can't get my prescription filled[,]" "[w]hoever answered the phone," would document that complaint and place the complaint into the patient's file. (Dep. Michelle Casdia, Jan. 30, 2015, Dkt No. 89-11 [hereinafter Casdia Dep.] 8:15-23, 9:7-8, 84:10-85:19, 91:8-23.) In his Response to Defendant's Motion for Summary Judgment, Plaintiff points the Court to "Exhibit 4 at nt 217-223) for proof that "Caroline Bailey informed Plaintiff of the defamatory statement that was made to her by a Walgreen pharmacist on May 1, 2009." (Resp. at 14.) Presumably this "Exhibit 4" was an internal record. The Exhibit 4 attached to Plaintiff's Response is the deposition of Ms. Shick. The quoted section does not reference a "Caroline Bailey." The Court independently reviewed all of the attached exhibits to Plaintiff's Response and could not find the office records mentioned. As such, the Court did not consider such evidence.

Second, Plaintiff points to correspondence between his former counsel and Defendant's former counsel. In July 2010, Plaintiff again contacted Ms. Shick. (Shick Dep. 25:18-23.) Plaintiff told Ms. Shick that he was told by patients that on July 23, 2010 a pharmacist at the 5627 Germantown Avenue Walgreens refused to fill Plaintiff's prescriptions and advised Plaintiff's patients that Plaintiff was under federal investigation by the Drug Enforcement Agency. (Shick Dep. 27:3-17.) Plaintiff further reported to Ms. Shick that his patients had told him that the pharmacist told them that the "Walgreens' computer system warned them that Dr. Yarus is under investigation and precluded filling any prescriptions written by him." (Shick Dep. 29:3-11.)

On July 26, 2010, Ms. Shick wrote to Brett Stacey, then counsel for Defendant, advising him of the incident from July 23, 2010. (Shick Dep. 26:18-23; Ltr. from Ms. Shick to Mr. Stacey, July 26, 2010, Dkt No. 89-6.) On July 30, 2010, Mr. Stacey wrote Ms. Shick an email, stating that "I have confirmed all comments have been removed." (Shick Dep. 31:2-5; Email from Mr. Stacey to Ms. Shick, July 30, 2010, Dkt No. 89-6.)

On August 3, 2010, Ms. Shick wrote Mr. Stacey an email requesting a letter on Defendant's letterhead "explaining how and why the notations regarding Dr. Yarus being under investigation was entered into Walgreens' computer system and what was done to remedy that." (Shick Dep. 32:7-15; Email from Ms. Shick to Mr. Stacey, August 3, 2010, Dkt No. 86-9.) In response to this email, that same day, Mr. Stacey wrote to Ms. Shick that "the comments have been removed." (Shick Dep. 33:25-34:2; Email from Mr. Stacey to Ms. Shick, August 3, 2010, Dkt No. 89-6.)

On August 11, 2010, Ms. Shick wrote Mr. Stacey an email requesting follow-up on the letter on letterhead. (Shick Dep. 34:17-35:2; Email from Ms. Shick to Mr. Stacey, August 11, 2010, Dkt No. 89-6.) Mr. Stacey responded to this email, that same day, reporting that "[w]e continue to look into the origin of the notation" and that the notations have been removed. (Shick Dep. 35:18-36:4; Email from Mr. Stacey to Ms. Shick, Aug. 11, 2010, Dkt No. 89-6.) On August 13, 2010, Mr. Stacey wrote Plaintiff a letter directly. (Shick Dep. 37:11-13.) In this letter, Mr. Stacey wrote the following:

> [I] have been advised that we do not have the ability to identify historical data pertaining to the prescriber profile (such as the identity of the pharmacy staff that entered comments). Two District Pharmacy Supervisors are currently investigating whether they

can otherwise identify pharmacy staff that entered the comment into the prescriber profile so as to learn the rationale/basis for the notation.

In the meantime, I can confirm that all comments have since been removed from your prescriber profile.

(Ltr. from Mr. Stacey to Pl., August 13, 2010, Dkt No. 89-6.)

### d.   March 23, 2013 Incident

On March 23, 2013,[3] pharmacist Aunee Loi at Defendant's store in Limerick,

Pennsylvania, refused to fill the prescription of Plaintiff's patient, Damien Zajac. (Damien Zajac,

Deposition, Dec. 19, 2014, Dkt No. 89-13 [hereinafter Zajac Dep.] 48:12-21, 49:23-50:13.)

According to Mr. Zajac, Ms. Loi stated that "Dr. Yarus is an irresponsible doctor who just writes

scripts and probably does very little treating." (Zajac Dep. 49:23-50:13.)

In April 2013, at his next scheduled appointment with Plaintiff, Mr. Zajac told Plaintiff

about this interaction with Ms. Loi. (Zajac Dep. 83:18-85:7.)

### e.   June 13, 2013 Incident

In the Amended Complaint, Plaintiff alleged that there was a publication of the

defamatory statements on June 13, 2013. (AC ¶¶ 23-26.) There is no evidence in the record about

that day. To the extent that Plaintiff sought to make any claims for defamation based on that

particular day, the Court holds that those claims are dismissed.

### f.   December 23, 2013 Incident

On December 23, 2013, Defendant's pharmacist refused to fill a prescription for

Plaintiff's patient, Karen Gondos. (Karen Gondos, Deposition, Jan. 29, 2015 [hereinafter Gondos

Dep.] 24:20-25:8.) According to Ms. Gondos during her deposition,[4] the pharmacist told Ms.

Gondos that "[w]e don't fill this doctor's prescriptions…there was just nobody going to fill it in

the area – no chain store like Walgreen, CVS, Rite Aid. Nobody in the area fills his prescription.

---

[3] The Court notes that in the Amended Complaint, Plaintiff alleged that a pharmacist may have also defamed Plaintiff on March 22, 2013. Discovery has shown that on March 22, 2013, a pharmacist for Defendant refused to fill Mr. Zajac's prescription because Plaintiff was out of the area. (Zajac Dep.45:1-24.) Given that there is no evidence of defamation on this day, to the extent that Plaintiff has any claim related solely to the conduct of Defendant's pharmacist on March 22, 2013, such claims are dismissed.

[4] In a statement made prior to her deposition, Ms. Gondos stated that the pharmacist had told her "We don't fill this doctor's prescriptions. He is just dispensing narcotics. And no Walgreens, CVS, and probably Rite Aid will fill any of his prescriptions." (Gondos Dep. 47:11-21.) Ms. Gondos reviewed this statement prior to her deposition. (Gondos Dep. 48:5-8.) She also affirmed the content of this statement during her deposition. (Gondos Dep. 47:20-21.)

They feel he passes out too many pain pills…I'm not going to tell you that anybody is looking at him. But the DEA wants us to report all prescriptions with him. We can't fill anything until we call him or he has to call us." (Gondos Dep. 25:5-26:13.) Ms. Gondos asked the pharmacist if she "should just get another doctor?" and the pharmacist responded that she would "recommend that." (Gondos Dep. 26:15-16.)

### g. Plaintiff's April 17, 2014 Heart Attack

Plaintiff suffered a heart attack on April 17, 2014 and underwent quadruple heart bypass surgery on April 19, 2014. (Lance Yarus, Deposition, November 21, 2014, Dkt Nos. 89-7, 89-8, 89-9 [hereinafter, collectively, Yarus Dep.] 338:7-339:24; Medical Bills, Dkt Nos. 89-20, 89-21.) Plaintiff alleges that the heart attack was caused in part by the defamation and interference with contract incidents.

## III.   Discussion

### a. The comments on Defendant's internal computer system alone, absent their repetition by Defendant's pharmacists to third parties, cannot support a claim of defamation.

To sustain a claim for defamation, Plaintiff must show

(1) The defamatory character of the communication.
(2) Its publication by the defendant.
(3) Its application to the plaintiff.
(4) The understanding by the recipient of its defamatory meaning.
(5) The understanding by the recipient of it as intended to be applied to the plaintiff.
(6) Special harm resulting to the plaintiff from its publication.
(7) Abuse of a conditionally privileged occasion.

42 Pa. C.S.A. § 8343.

"In order to prove publication, the Plaintiff must show that the allegedly defamatory statement was communicated by the defendant to a third party." *Mollick v. Beverly Enterprises-Pennsylvania, Inc.*, 1997 WL 634496, at *3 (E.D. Pa. 1997) (citing *Elia v. Erie Ins. Exchange*, 634 A.2d 657, 660 (1993)). In *Mollick*, the allegedly defamatory statements were contained in Plaintiff's permanent employment record, and kept at Defendant's local office. *Id.* at *3. The Court held that the comments were not "published" for the purposes of a defamation suit. *Id.*

The publication of the prescriber profile to Defendant's employees via the internal computer system cannot constitute a claim for defamation. Instead, such comments must be published to third parties. In Plaintiff's Response to Defendant's Motion for Summary Judgment,

it appears as though Plaintiff is not alleging any claims based solely on the comments in the system, absent their publication. To clarify the record for all parties, insofar as Plaintiff continues to assert any claim for relief on a theory regarding the comments in the prescriber profile, absent their publication to third parties beyond Defendant's employees, such claims are DISMISSED.

> **b. The two instances of publication of statements by pharmacists made prior to 2012 are time-barred by the Statute of Limitations.**

In Pennsylvania, the statute of limitations for a defamation claim is one year. 42 Pa. C.S. § 5523. Generally, the statute of limitations begins to run at the original publication of the defamatory statement. *In re Philadelphia Newspapers, LLC*, 690 F.3d 161, 174 (3d Cir. 2012). In Pennsylvania, the statute of limitations for a claim of tortious interference with contract based on defamation is also one year. *Evans v. Philadelphia Newspapers, Inc.*, 411 Pa.Super. 244, 601 A.2d 330, 332-33 (1991).

Plaintiff commenced this action on November 26, 2013. (MSJ ¶ 2; Resp. ¶ 2; Dkt No. 1, Ex. A.) Absent any tolling, the statute of limitations bars all claims related to events that predate November 26, 2012. In his Amended Complaint, Plaintiff alleges two instances of defamation and tortious interference with contract that occurred on May 1, 2009, and July 13, 2010. (AC ¶¶ 16, 19.)

Plaintiff alleges that the statute of limitations is tolled by Defendant's fraudulent concealment. (AC ¶¶ 57-71.) Plaintiff argues that when Mr. Freeman in 2009 and Mr. Stacey in 2010 represented to Ms. Shick that the allegedly defamatory comments had been removed from Plaintiff's prescriber profile, when, in fact, they had not been removed, the statute of limitations was tolled for those instances of defamation occurring in 2009 and 2010.

The purpose of the discovery rule is to protect the injured Plaintiff, who "despite the exercise of reasonable diligence," was unable to "know that he is injured and by what cause." *Fine v. Checcio*, 582 Pa. 253, 870 A.2d 850, 861 (2005) (citing *Pocono Internat'l Raceway, Inc. v. Pocono Produce, Inc.*, 503 Pa. 80, 468 A.2d 468, 471 (1983)). The Court must look to whether Plaintiff, while exercising reasonable diligence, had the ability to know of his injury and its cause. *Id.*

In this case, this inquiry concludes swiftly. The record is clear that Plaintiff had actual knowledge of the publication of the defamatory comments shortly after the time of their publication. The record shows that Plaintiff had actual knowledge of the May 1, 2009 incident at

least as soon as May 7, 2009 (the date on which Ms. Shick, Plaintiff's then counsel, wrote to Defendant, at Plaintiff's request, on May 7, 2009 about the May 1, 2009). (Shick Dep. 8:7-12; 13-3-12; Ltr. from Ms. Shick to Def's Legal Dept., May 7, 2009, Dkt No. 89-6.) Similarly, the record shows that Plaintiff had actual knowledge of the July 23, 2010 incidents at least as soon as July 29, 2010 (the date on which Ms. Shick wrote to Defendants, at Plaintiff's request, regarding the July 23, 2010 incidents). (Shick Dep. 25:18-23, 26:18-23, 27:3-17, 29:3-11; Ltr. from Ms. Shick to Mr. Stacey, July 26, 2010, Dkt No. 89-6.)

Thus, the statute of limitations does not toll the defamation claims related to the incidents on May 1, 2009 and July 23, 2010. The statute of limitations for those original publications of the defamatory statements in 2009 and 2010 began, at a minimum, when Plaintiff had actual knowledge of them on May 7, 2009 and July 29, 2010. Defendant's alleged fraudulent concealment occurred after Plaintiff had actual knowledge of the publication of the allegedly defamatory statements. The doctrine of fraudulent concealment cannot be used to allow Plaintiff to file claims now that he could have timely filed then.  Thus, all claims for defamation or tortious interference of contract related to May 1, 2009 and July 23, 2010 are time-barred and DISMISSED.

### c. Any claim as to the alleged incident on June 13, 2013 is dismissed as there is no evidence in the record to substantiate that claim.

Plaintiff's Amended Complaint alleges that a pharmacist made a defamatory statement to Plaintiff's patient on June 13, 2013. (AC ¶¶ 23-26.) Plaintiff's Responses to his Interrogatories identify this patient as Jeffrey Grosso. (Pl. Interrog. ¶ 11.) There is no evidence in the record to support this claim. Plaintiff does not address this claim in his Response to Defendant's Motion for Summary Judgment. Insofar as Plaintiff continues to pursue any claims related to the June 13, 2013 incident, such claims are DISMISSED.

### d. The alleged statements made by Defendant's pharmacists to Plaintiff's patients are capable of a defamatory meaning; issues of material fact remain, creating a jury question as to whether Mr. Zajac and Ms. Gondos understood the defamatory meanings of the statements.

Plaintiff's remaining viable claims for defamation and tortious interference with contract concern the incidents with Mr. Zajac on March 23, 2013 and Ms. Gondos on December 23, 2013. As to these claims, Defendant argues that Mr. Zajac and Ms. Gondos did not believe the

content of the statements made to them by Defendant's pharmacists, and thus, the statements cannot be defamatory. (MSJ at 12.)

First, in Pennsylvania, "it is the function of the court, in the first instance, to determine whether the communication complained of is capable of a defamatory meaning. . . . If the court . . . (so finds), it is for the jury to determine whether it was so understood by the recipient." *Steaks Unlimited Inc. v. Deaner*, 623 F.2d 264, 270 (3d Cir. 1980) (quoting *Corabi v. Curtis Pub. Co.*, 441 Pa. 432, 273 A.2d 899, 904 (1971)). To determine whether the communication is capable of a defamatory meaning, a court must evaluate the defamatory statement in context, looking at "the effect [it] is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate." *Tucker v. Fischbein*, 237 F.3d 275, 282 (3d Cir. 2001) (quoting *Corabi*, 273 A.2d at 907).

The statements left at issue in this case include the following:

(1) Statement allegedly made by Defendant's pharmacist, Ms. Loi, on March 23, 2013 to Plaintiff's patient Mr. Zajac, that "Dr. Yarus is an irresponsible doctor who just writes scripts and probably does very little treating."

(Zajac Dep. 49:23-50:13.)

(2) Statement allegedly by Defendant's pharmacist on December 23, 2013, to Plaintiff's patient Ms. Gondos that Plaintiff "passes out too many pills," along with statements impliedly suggesting that Plaintiff was under investigation by the DEA and that Ms. Gondos should get a new doctor.

(Gondos Dep. 25:5-26:16.)

These statements both suggest that Plaintiff is not capable of fulfilling his professional duties, and imply criminal activity. "Statements by a defendant imputing to the plaintiff a criminal offense, punishable by imprisonment, or conduct incompatible with the plaintiff's business constitute slander *per se*." *Brinich v. Jencka*, 2000 PA Super 209, 757 A.2d 388, 397 (2000) (citing Restatement (Second) of Torts §§ 570(a), (c), 573)). Thus, the Court finds that the statements are capable of a defamatory meaning.

Second, there remains a trial issue of fact for the jury as to whether the statements' defamatory meanings were so understood by Mr. Zajac and Ms. Gondos. The Court notes that the testimonies of Mr. Zajac and Ms. Gondos could, in the eyes of the jury, actually bolster the finding that they understood the defamatory meanings. Mr. Zajac and Ms. Gondos both reported the pharmacists' statements to Plaintiff quickly. Even if neither Mr. Zajac nor Ms. Gondos believed the truth of the allegations, a jury could "infer that the strength of [their] reactions in

defense of Plaintiff demonstrate the potential harm that they know could result from such an accusation." *Tarquini v. Gorbreg*, 2010 WL 3522140, at \*4-5 (E.D. Pa. 2010); *see also Sprague v. Am. Bar Ass'n*, 276 F.Supp.2d 365, 370 (E.D. Pa. 2003) ("Although defendant is correct that numerous witnesses state that their opinion of plaintiff was not adversely affected, the reason given by these witnesses as to why their opinions were not changed yields a rational inference that supports a finding of actual harm to plaintiff.").

The listener's belief in the statement is not dispositive of the statement's defamatory character. Further, in this case, there is evidence in the record cutting both ways as to whether the defamatory meanings of the statements were understood by Mr. Zajac and Ms. Gondos. The Court DENIES Defendant's Motion under this theory.

### e.   Material issues of fact persist, creating a jury question as to whether Defendant abused its conditional privilege.

In Pennsylvania, there is a conditional privilege for "[c]ommunications which are made on a proper occasion, from a proper motive, in a proper manner, and which are based upon reasonable cause." *Moore v. Cobb-Nettleton*, 2005 PA Super 426, 889 A.2d 1262, 1268 (2005). The burden rests with the defendant to prove the privileged character of the occasion on which the allegedly defamatory statements were published. 42 Pa. C.S. § 8343(b). Defendant argues that the conversations between each pharmacist and Mr. Zajac and Ms. Gondos were privileged because they were made pursuant to the pharmacist's duties as defined by the Pennsylvania Code. Pursuant to the Code:

> [A] pharmacist may decline to fill or refill a prescription if, in the pharmacist's professional judgment exercised in the interest of the safety of the patient, the pharmacist believes the prescription should not be filled or refilled. The pharmacist shall explain the decision to the patient. If necessary, the pharmacist shall attempt to discuss the decision with the prescriber.

49 Pa. Code § 27.18(c). The Court agrees with Defendant that conversations between pharmacists and their clients, pursuant to the state board of pharmacy standards of practice, attain a conditional privilege.

However, while the Court determines whether a privilege applies, "the jury considers whether the privilege was abused." *Johnson v. Resources for Human Development, Inc.*, 860 F.Supp. 218, 223 (E.D. Pa. 1994) (citing *Bargerstock v. Washington Greene Community Action Corp.*, 397 Pa.Super. 403, 580 A.2d 361, 361 (1990)). The burden shifts to Plaintiff to "show abuse of the conditionally privileged occasion." *U.S. Healthcare, Inc. v. Blue Cross of Greater*

*Philadelphia*, 898 F.2d 914, 923 (3d Cir. 1990). Conditional privileges are abused when the publication:

> (1) is actuated by malice or negligence;
> (2) is made for a purpose other than that for which the privilege is given;
> (3) is made to a person not reasonably believed to be necessary for the accomplishment of the purpose of the privilege; or
> (4) includes defamatory matter not reasonably believed to be necessary for the accomplishment of the purpose.

*Elia*, 634 A.2d at 661 (citing *Beckman v. Dunn*, 276 Pa.Super. 527, 419 A.2d 583, 588 (1980)). Thus, a plaintiff can show that a defendant abused such a privilege through a showing of the defendant's negligence. *Banas v. Matthews Internat'l Corp.*, 348 Pa.Super. 464, 502 A.2d 637, 638-39 (1985). However, since a showing of negligence is required both to prove a prima facie claim of defamation, and to overcome the conditional privilege, the Pennsylvania Supreme Court has stated that conditional privileges have become "superfluous." *American Future Systems, Inc. v. Better Business Bureau of Eastern Pa.*, 923 A.2d 389, 397-98 (2007).

The Court finds that there are material issues of fact remaining regarding whether Defendant acted with malice, or negligence, in allowing the entry that Plaintiff was "being investigated by DEA" to remain, or be reentered, in the prescriber profile system, and whether the comments made by the pharmacists, if such conversations were the natural and probable consequence of the entry on the prescriber profile system, were of such a defamatory nature that they were not within the scope of the conditional privilege. The Court DENIES Defendant's Motion under this theory.

### IV.   Conclusion

The Court GRANTS IN PART AND DENIES IN PART Defendant's Motion. In summary, the Court dismisses all claims excepting those for defamation and tortious interference of contract relating to the publication of the comments in the prescriber profile made via statements by Defendant's pharmacists to Plaintiff's patients on March 23, 2013 and December 23, 2013. Material disputes of fact remain as to these claims. All other claims are hereby DISMISSED.

BY THE COURT:

/s/ C. Darnell Jones, II

_____

C. Darnell Jones, II    J.

12